**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

**SANDRA ANDERSON**,

Plaintiff,

v.

**JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,**

Defendant.

Civil No. 04-3341 (JRT/JGL)

**REPORT AND
RECOMMENDATION**

APPEARANCES

Jamison W. Cichosz, Esq., Nycklemoe Ellig & Nycklemoe, P.O. Box 936, Fergus Falls, Minnesota 56538, for Plaintiff Sandra Anderson

Lonnie F. Bryan, Esq., Assistant United States Attorney, 300 South 4th Street, Suite 600, Minneapolis, Minnesota 55415, for Defendant Jo Anne B. Barnhart

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

Plaintiff Sandra Anderson seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied her application for supplemental security income benefits. The matter has been referred to the undersigned Chief United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. The parties have submitted cross motions for summary judgment. For

the reasons set forth below, this Court recommends that the Commissioner's decision be affirmed and the case be dismissed with prejudice.

## I.   INTRODUCTION

Sandra Anderson was born on July 16, 1960. (R. at 193.) Ms. Anderson protectively filed an application for supplemental security income benefits on August 14, 2001. (R. at 18.) She alleged disabilities of fibromyalgia, depression, asthma, and chronic fatigue syndrome, with an onset date of March 15, 2001. (R. at 19, 193-96.) The Social Security Administration denied the application initially and on reconsideration. Ms. Anderson timely filed a request for a hearing, which was held before an Administrative Law Judge ("ALJ") on November 26, 2003.[1]

The ALJ issued an unfavorable decision on March 31, 2004. (R. at 15.) In the decision, the ALJ employed the five-step, sequential analysis provided in 20 C.F.R. § 416.920. At step one, the ALJ found Ms. Anderson has not engaged in substantial gainful activity since she filed her application. (R. at 21.) At step two, the ALJ found Ms. Anderson to be severely impaired by fibromyalgia, osteoarthritis of the knees, and an

---

[1] This hearing was the second administrative hearing for Ms. Anderson. The first hearing occurred on November 6, 2002, and resulted in an adverse decision on February 13, 2003. (R. at 116, 126.) On administrative appeal, the Appeals Council remanded the case to the ALJ. The second hearing ensued before a different ALJ.

affective/anxiety/personality disorder.  (Id.)  At step three, the ALJ determined that Ms. Anderson's impairments did not meet or equal a listing in the Listing of Impairments contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Id.)  Next, the ALJ progressed to step four and concluded that Ms. Anderson did not retain the residual functional capacity ("RFC") to perform her past relevant work.  (R. at 31.)  Thus, the ALJ turned to step five, finding that Ms. Anderson could perform some unskilled light work and a full range of unskilled sedentary work.  (R. at 32.)

Ms. Anderson appealed the ALJ's decision and submitted additional evidence to the Appeals Council, which was added to the record. The Appeals Council denied her request for review on May 20, 2004. (R. at 6.) The decision of the ALJ therefore became the final decision of the Commissioner.

## II.    DISCUSSION

Ms. Anderson challenges the following aspects of the Commissioner's decision: the ALJ's evaluation of her subjective complaints of pain, the ALJ's acceptance of consulting physicians' opinions over those of her treating physicians, and the ALJ's determination that she could perform other substantial, gainful activity.

Judicial review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Brand v. Sec'y of Dep't of Health, Educ., & Welfare, 623 F.2d 523, 527 (8th Cir. 1980). In determining whether evidence is substantial, the Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). If the Commissioner's decision is based on substantial evidence in the record, the Court may not reverse it merely because other substantial evidence would have supported a different outcome. Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000) (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)).

### A. The ALJ's Evaluation of Ms. Anderson's Subjective Complaints of Pain

Ms. Anderson first faults the ALJ's assessment of her subjective complaints of pain. In determining a claimant's RFC at step four of the sequential analysis, an ALJ must evaluate the credibility of the claimant's subjective complaints of pain. Ramirez v. Barnhart, 292 F.3d 576, 580 (8th

Cir. 2002). In <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984), the Eighth Circuit approved a standard for credibility evaluations of a claimant's pain and subjective complaints. The absence of supporting medical evidence is one factor to consider in evaluating credibility. <u>Id.</u> at 1322. The ALJ must also consider the claimant's prior work record; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. <u>Id.</u> "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." <u>Id.</u> Questions of credibility are for the trier of fact, and a reviewing court should defer to the ALJ's credibility determinations if the decision expressly discounts a claimant's evidence and gives good reason to do so. <u>Dixon v. Sullivan</u>, 905 F.2d 237, 238 (8th Cir. 1990).

### 1.     **Prior Work Record**

Here, the ALJ noted that Ms. Anderson's prior work record showed earnings of more than $10,000.00 in 1999 and 2000, which he weighed against her claim of being unable to work. (R. at 28.) The ALJ properly used this factor to discount Ms. Anderson's credibility.

### 2.     **Daily Activities**

As to Ms. Anderson's daily activities, the ALJ noted numerous inconsistencies between Ms. Anderson's testimony and other record evidence.

For example, Ms. Anderson testified that she spends most of her days in bed and does very little when she is out of bed.  (R. at 78-82.)  She testified that her daughter does the grocery shopping and chores.  (R. at 78.)  However, Ms. Anderson completed an Activities of Daily Living Questionnaire in November 2001, in which she stated she did housework every day, including vacuuming, cooking, and washing dishes.  (R. at 213, 216).  Ms. Anderson also told a consulting psychologist that she did all of her own housework, laundry, cooking, and shopping.  (R. at 320.)  Ms. Anderson also testified that she had no hobbies (R. at 80), but her neighbor reported that Ms. Anderson's hobbies included ceramics and finishing furniture (R. at 225).  The ALJ properly considered inconsistencies in the record in assessing Ms. Anderson's activities of daily living.

Moreover, there is ample evidence in the record showing that Ms. Anderson's disabilities do not preclude her from engaging in a variety of daily activities, and the ALJ did not err in considering this evidence.[2]  See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (affirming ALJ's decision to discount credibility where claimant could do some housework, cook, and

---

[2] The Court notes that the ALJ did not totally discount Ms. Anderson's credibility based on her daily activities.  Rather, he stated that he "is not persuaded that daily activities are totally compromised by pain, depressive symptoms, medication side-effects or similar feature[s]."  (R. at 28.)

shop); Nguyen v. Chater, 75 F.3d 429, 430 (8th Cir. 1996) (affirming ALJ's decision to discount credibility where claimant visited neighbors, cooked her own meals, did her own laundry, and attended church).

### 3. Duration, Frequency, and Intensity of Pain

The ALJ next considered the duration, frequency, and intensity of Ms. Anderson's pain. Ms. Anderson testified that she experiences continuous pain, which the ALJ noted, but the ALJ found the amount of medical treatment to be inconsistent with debilitating pain. (R. at 29.) This finding is well-supported by the record. As the ALJ noted, Ms. Anderson does not engage in physical therapy or other conditioning or strengthening programs, which is common for individuals suffering from fibromyalgia. (Id.) Ms. Anderson reported to Dr. Lessard that her pain was 50% better than before the onset of disability date. (R. at 287.) Although Ms. Anderson claimed to have headaches daily, one of her treating physicians described them as "intermittent," occurring twice a month. (R. at 519.) There is very little medical evidence indicating pain in her knees. The Court reiterates that although there may be evidence in the record supporting Ms. Anderson's position, there is also substantial evidence, which was cited by the ALJ, negating the severity of her pain. Accordingly, the ALJ did not err in discounting the duration, frequency, and intensity of Ms. Anderson's pain.

### 4. Dosage, Effectiveness, and Side Effects of Medication

The Court now turns to the dosage, effectiveness, and side effects of Ms. Anderson's medication. Ms. Anderson reported taking Soma, Loracet, Celexa, Trazadone, Prempro, Albuteral, Pulmicort, Guaifenex, Prednisone, Zithromax, Prometh with codeine, and Ibuprofin. (R. at 256.) The ALJ considered Ms. Anderson's use of medication in his decision. (R. at 20.) He acknowledged that her use of Celexa has not been helpful. (Id.)

The ALJ stated that the record reveals a history of drug-seeking behavior and medication overuse. (R. at 29.) This conclusion by the ALJ is well-supported. On October 26, 2002, Ms. Anderson was brought to the emergency room for suspected intoxication from her medications. (R. at 575-76.) Although she had been treated by several doctors in the preceding weeks, she told the emergency room staff that she had "not seen a physician in ages." (R. at 575.) Dr. Nyhus's staff learned in June 2003 that Ms. Anderson was getting Soma refills at two different pharmacies, both with Dr. Nyhus's name. (R. at 584-85.) In October 2003, Dr. Nyhus leaned that Ms. Anderson was obtaining narcotics from another doctor as well, without notifying him. (R. at 555, 557, 584.) When questioned, Ms. Anderson denied she had done this. (R. at 557.) Dr. Nyhus wrote on October 29, 2003 that he was no longer comfortable prescribing narcotics to Ms. Anderson and that he

"certainly would discourage narcotic consideration for this patient." (R. at 549.) The ALJ was certainly entitled to consider Ms. Anderson's drug-seeking behavior and over-medication in assessing the dosage, side effects, and effectiveness of her medication. Her documented overuse of medication necessarily undermines her credibility as to this factor and her credibility in general.

### 5. **Precipitating and Aggravating Factors**

As to precipitating and aggravating factors, the ALJ noted that the record did not substantiate Ms. Anderson's claim that her pain has worsened over time. (R. at 28.) Indeed, treatment notes from Dr. Nyhus do not show an escalation in pain. (R. at 358, 361, 549, 553, 555.) The ALJ attributed some of Ms. Anderson's need to remain in bed to her over-medication rather than her pain (R. at 30), which is a reasonable conclusion. The ALJ also considered Dr. Lessard's opinion that Ms. Anderson's fibromyalgia and resulting pain were aggravated by pending litigation related to an automobile accident. (R. at 290.) Dr. Lessard recommended that Ms. Anderson resolve her litigation before receiving any treatment because in his experience, "patients with fibromyalgia syndrome who undergo litigation have literally a 100% failure rate in controlling their symptoms." (R. at 290-91.) In sum, there is

substantial evidence supporting the ALJ's finding that precipitating and aggravating factors discredit Ms. Anderson's complaints of pain.

### 6.     **Functional Limitations**

Finally, the ALJ examined the record for functional limitations caused by Ms. Anderson's alleged disabilities.  He found her testimony inconsistent with medical evidence in the record.  (R. at 30.)  The ALJ cited to treatment notes from Dr. Lessard, which describe Ms. Anderson's musculoskeletal condition as "negative" and "unremarkable."  (R. at 289-90.)  Dr. Lessard also interpreted x-rays of Ms. Anderson's spine as "normal" and "unremarkable."  (R. at 290.)  These findings controvert the functional limitations claimed by Ms. Anderson.

The ALJ specifically concluded there was little evidence to support Ms. Anderson's claim of an inability to stand for longer than twenty minutes or to lift more than five pounds.  (R. at 30.)  Dr. Nyhus completed an RFC Questionnaire on January 24, 2002, in which he noted restrictions such as sitting for no more than ten minutes, standing for no more than ten minutes, and rarely being able to lift less than ten pounds.  (R. at 348-50.)  These restrictions are suspect for several reasons.  At the time Dr. Nyhus completed the questionnaire, he was not aware of Ms. Anderson's over-medication and any effect it might have on her abilities.  Evidence that Ms. Anderson was over-

medicating and that she was pursuing litigation is germane to whether her functional abilities were truly compromised, which the ALJ noted.  There is also evidence in the record contradicting the limitations suggested by Dr. Nyhus, on which the ALJ could reasonably base his decision.  The record reflects no muscle weakness (R. at 289), no neck pain (R. at 361), mildly limited range of motion in her knees (R. at 554), no effusions in her knees (id.), mildly limited range of motion in her shoulders (id.), and moderately limited range of motion in her spine (id.).  The ALJ also rejected the RFC Questionnaire because Dr. Nyhus's treatment notes from the same day showed that he and Ms. Anderson together "reviewed the questions on the functional assessment form and filled it out."  (R. at 26-27, 352.)  The ALJ felt, therefore, that the limitations suggested by Dr. Nyhus were based on Ms. Anderson's self-reported pain and restrictions, not on Dr. Nyhus's own objective medical findings.  (R. at 27.)  A physician's opinion based on a claimant's subjective reports of pain deserves little weight.  Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993).  For the numerous reasons cited above, the ALJ properly rejected the functional restrictions set forth in the RFC Questionnaire by Dr. Nyhus.

  The ALJ also rejected letters from Dr. Nyhus written in October 2002 and September 2003, in which the doctor briefly stated that Ms.

Anderson was unable to work.  (R. at 26, 489.)  The ALJ was justified in rejecting these letters because they contained conclusory statements that Ms. Anderson could not work, which is a determination reserved solely for the Commissioner.  Nelson v. Sullivan, 946 F.2d 1314, 1316-17 (8th Cir. 1991) (citation omitted).  The letters from Dr. Nyhus also contained no clinical or diagnostic data.  An ALJ is not required to accept a treating physician's opinion if it is conclusive and not supported by clinical or diagnostic data. Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (citing Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996)).

Similarly, the ALJ was justified in rejecting Dr. Carpenter's opinion that Ms. Anderson was unable to work.  (R. at 27, 555.)  Dr. Carpenter's report was based on only one evaluation.  It is clear from the report that his opinion was based not only on Ms. Anderson's self-reports but also on his review of Dr. Nyhus's file (R. at 553-55), which means his opinion was not based on his own objective medical findings.  Further, Dr. Carpenter's findings are not consistent with a total inability to perform all employment. The treatment note imparts only a mildly decreased range of motion in Ms. Anderson's shoulders, hips, and knees; no effusions in the hips or knees; tenderness in the upper extremities and patellae, but no other tenderness or loss of motion in her joints; moderately limited cervical rotation in her spine;

and moderately limited lumbar flexion and extension.  (R. at 554.)  Moreover, Dr. Carpenter expected Ms. Anderson's symptoms to improve.  (R. at 555.)

Finally, the Court reiterates that the ultimate question of whether a claimant can work despite her functional limitations is a question reserved solely for the Commissioner.  <u>Nelson</u>, 946 F.2d at 1316-17 (citation omitted).  Here, the ALJ properly rejected the physicians' conclusory opinions that Ms. Anderson would be totally precluded from all employment due to her functional limitations.

### 7. <u>Conclusion</u>

The Court has reviewed the ALJ's assessment of Ms. Anderson's subjective complaints of pain and finds the ALJ's decision particularly thorough and well-supported.  The Court notes that the ALJ did not completely reject Ms. Anderson's complaints of pain; he accepted that she experiences pain and discomfort and suffers from exacerbations of her pain.  (R. at 30.)  The ALJ simply discounted the severity of Ms. Anderson's complaints of pain in accordance with <u>Polaski</u>.  The Commissioner is entitled to summary judgment on this issue.

### B. <u>The ALJ's Consideration of Ms. Anderson's Treating Physicians' Opinions</u>

Specifically, Ms. Anderson argues that the ALJ wrongfully weighed the assessments of consulting physicians over the opinions of Dr. Nyhus, Dr. Carpenter, and Dr. Lessard. To the contrary, the ALJ summarized the medical evidence from Ms. Anderson's doctors and incorporated much of the data and opinions. (R. at 19-20, 24-25.) The only evidence rejected by the ALJ were Dr. Nyhus's letters in October 2002 and September 2003, the RFC Questionnaire completed by Dr. Nyhus, and Dr. Carpenter's report from October 13, 2003. (R. at 26.) As previously discussed, the ALJ was justified in rejecting Dr. Nyhus's letters because they contained conclusory statements that Ms. Anderson could not work. The letters did not include clinical or diagnostic data or specific limitations. The opinion put forth in the RFC Questionnaire was inconsistent with other record evidence, did not account for Ms. Anderson's over-medication, and was based on Ms. Anderson's self-reports rather than on objective medical findings. Accordingly, the ALJ correctly disregarded the RFC Questionnaire. The ALJ rejected Dr. Carpenter's report for similar reasons. The report was based on one evaluation, was not supported by clinical findings, and was not supported by objective medical findings.

Ms. Anderson's contention that the ALJ rejected all of the medical evidence from her treating physicians is incorrect. The ALJ rejected only four

specific pieces of evidence, and he gave appropriate reasons for each one. The ALJ accepted other objective medical evidence from Ms. Anderson's doctors, as evidenced in the decision. (R. at 30.) The Commissioner should be granted summary judgment on this issue.

### C.  The ALJ's Consideration of Consulting Physicians' Opinions

Ms. Anderson also challenges the ALJ's consideration of records submitted by a DDS physician who did not examine her. An ALJ may consider the opinions of non-examining medical sources. 20 C.F.R. § 404.1527(f). In fact, an ALJ is required to consider such opinions. Id. § 404.1527(f)(2)(i). The Court finds that the ALJ did not err in relying on the opinion of Dr. Zarama.

Dr. Zarama found Ms. Anderson capable of performing light work, based primarily on Dr. Lessard's medical findings. (R. at 376.) The consulting doctor recommended that Ms. Anderson be limited to lifting no more than twenty pounds occasionally and ten pounds frequently, standing or walking no more than six hours in an eight-hour day, and sitting about six hours in an eight-hour day. (Id.) These restrictions correlate to Dr. Lessard's findings that Ms. Anderson experienced no symptoms with respect to her head, neck, ribs, and pelvis; unremarkable symptoms with respect to her spine; normal range of motion in her spine; only a small effusion in her knees; no other

symptoms in other joints; and normal x-rays of the spine. (R. at 289-90.) Dr. Zarama specifically cited to Dr. Lessard's treatment notes on the questionnaire. (R. at 376-77.) Dr. Zarama also found no objective medical evidence supporting Dr. Nyhus's conclusory opinion that Ms. Anderson was precluded from all employment. (R. at 382.) Given that the ALJ was permitted to consider Dr. Zarama's opinion and that the opinion was consistent with medical evidence in the record, the ALJ did not err in considering the opinion as substantial evidence. The Commissioner is entitled to summary judgment on this issue as well.

### D. The ALJ's Determination that Ms. Anderson is Able to Perform Light Work

Ms. Anderson faults the ALJ for not accepting testimony from Vocational Expert James Berglie that she is unable to work based on her limitations. The Court rejects Ms. Anderson's argument for two reasons. First, Mr. Berglie testified at the first administrative hearing in November 2002. However, the ALJ based his decision on the testimony and evidence produced at the second administrative hearing, at which vocational expert Warren Haagenson testified. Second, Ms. Anderson fails to mention that Mr. Berglie's testimony was given in response to a hypothetical question containing a limitation that the ALJ did not accept. One of the alternative

hypothetical questions posed to Mr. Berglie included an inability to work a full day for five consecutive days. (R. at 59.) Neither the ALJ in the first case nor the ALJ in the present case found such a limitation for Ms. Anderson. (R. at 31-33, 126.) A hypothetical question must include only the impairments and limitations accepted by the ALJ. Pearsall v. Massanari, 274 F.3d 1211, 1220 (8th Cir. 2001) (citing Chamberlain v. Shalala, 47 F.3d 1489, 1495-96 (8th Cir.1995)). Here, the ALJ rejected Ms. Anderson's claim that she could not work a full day for five consecutive days, and the Court has found that the ALJ did not err in assessing Ms. Anderson's limitations.

The hypothetical question posed to Mr. Haagenson reflected the limitations suggested by Dr. Zarama, which the Court has already recognized as substantial evidence. The ALJ found Ms. Anderson to be limited to performing non-exertional, light work with the following restrictions: no lifting or carrying more than twenty pounds occasionally, no lifting or carrying more than ten pounds frequently, no repetitious or strenuous use of the lower extremities, only routine and repetitive job tasks, and no more than brief, superficial contact with the public. (R. at 33.) Although Ms. Anderson would be precluded from performing a full range of light work, the ALJ found she could work as a parking attendant, non-postal mail clerk, small parts/bench assembler, food/beverage order clerk, and charge account clerk. (R. at 34.)

The Court finds no error in the ALJ's assessment of Ms. Anderson's ability to perform a significant number of jobs in the national economy.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

(1)    Ms. Anderson's motion for summary judgment (Doc. No. 13) should be **DENIED**; and

(2)    The Commissioner's motion for summary judgment (Doc. No. 15) should be **GRANTED**.

Dated: June 13, 2005

                                         s/Jonathan Lebedoff
                                        JONATHAN LEBEDOFF
                                        Chief United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by June 30, 2005.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.